FILED'08 OCT 01 13:27 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| SHERRY WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 07-549-JO |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| COMMISSIONER, SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

Tim D. Wilborn
WILBORN LAW OFFICE, P.C.
P. O. Box 2768
Oregon City, OR 97045

  Attorney for Plaintiff

Neil J. Evans
Assistant United States Attorney
1000 S.W. third Avenue, Suite 600
Portland, OR 97204-2902

Stephanie R. Martz
SOCIAL SECURITY ADMINISTRATION
Office of the General Counsel
701 Fifth Avenue
Suite 2900 M/S 901
Seattle, WA  98104-7075

    Attorneys for Defendant

JONES, Judge:

    Claimant seeks judicial review of a final decision of the Commissioner of Social Security

denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social

Security Act.  See 42 U.S.C. §§ 401-33.  This court has jurisdiction to review the

Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Following a careful review of the

record, I affirm the Commissioner's decision.

## ADMINISTRATIVE HISTORY

    Claimant Sherry Williams was born on April 6, 1949.  Tr. 74.  She was 53 years old on

December 31, 2002, the date she was last insured for DIB.  Tr. 12.  She has a high school

education and reported that she has had additional training in business, office management, and

accounting.  Id.  She worked in the relevant past as a receptionist, secretary, patient account

representative, and an administrative assistant.  Id.  Claimant has not been gainfully employed

since February 15, 1997.  Id.

    Claimant filed an application for a period of disability and DIB on March 15, 2002,

alleging she has been disabled since February 15, 1997, because of physical and mental

impairments.  Tr. 11.  Her claim was denied initially and on reconsideration, and she then filed a

timely request for a hearing on September 26, 2002.  Id.

2 - OPINION AND ORDER

**First Administrative Decision**

On October 17, 2003, claimant, who was not represented by counsel, appeared and

testified at a hearing held before an Administrative Law Judge ("ALJ") ("the first hearing").

Tr. 260.  At the hearing, the ALJ determined that further medical evidence was necessary to

resolve the case and adjourned the hearing.  Tr. 11.  At the ALJ's request, on November 20, 2003,

claimant underwent examination by John French, M.D., whose report was entered into the

administrative record.  Id.

On February 13, 2004, claimant appeared and testified at a supplemental hearing before

the same ALJ ("the supplemental hearing").  Again, she was not represented.  Id.  At the

supplemental hearing, an impartial vocational expert ("VE") appeared and testified.  Id.  The VE

characterized all of claimant's past relevant work as "sedentary from semi-skilled to skilled in

nature."  Tr. 280-81.  In response to two hypothetical questions posed by the ALJ, the VE also

stated that a hypothetical person with the limitations as described by the ALJ would be able to

perform all of claimant's past work, but would not be able to sustain employment if she were to

miss two work days per month because of illness.  Tr. 282-83.

On March 29, 2004, the ALJ issued a decision finding claimant not under a disability as

defined in the Social Security Act and regulations and denied DIB benefits.  Tr. 12.  The ALJ

concluded that claimant had a "severe impairment or combination of impairments but retain[ed]

the residual functional capacity to return to work she performed in the past."  Id.  In sum, he

found that the combination of claimant's fibromyalgia and history of bilateral carpal tunnel

syndrome to be a "severe" impairment pursuant to the Social Security Act, but that claimant's

alleged chronic obstructive pulmonary disease ("COPD") and depression were not.  Tr. 12-15.

The ALJ also found claimant's statements regarding her impairments and their impact on her ability to work not entirely credible. Tr. 18-20. While the ALJ found the statements of claimant's spouse to be generally credible, he stated that they were not indicative of total disability. Tr. 20. The ALJ concluded that based on the record, claimant had the RFC to perform a modified range of light exertion work; thus, her impairments did not prevent her from performing her past relevant work on or before December 31, 2002. Tr. 22.

## U.S. District Court Opinion and Order

The Appeals Council denied claimant's request for review on July 19, 2004, making the ALJ's decision the final decision of the Commissioner. Tr. 302; see 20 C.F.R. §§ 404.981, 422.210. Claimant then filed an action in this court challenging the Commissioner's determination. On August 18, 2005, Judge Ancer Haggerty concluded that the Commissioner's decision was not supported by substantial evidence and reversed and remanded the case for further proceedings. Tr. 302.

Judge Haggerty stated that because claimant was not represented by counsel at either the first or supplemental hearing, the ALJ was required to more "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Tr. 307 (quoting Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978)). Specifically, the ALJ did not fully develop the record as to claimant's alleged fingering and handling limitations caused by her history of carpal tunnel syndrome. Tr. 309-11. He also failed to fully develop the record by not obtaining a statement from claimant's treating rheumatologist, Charles May, M.D., regarding his opinion of claimant's limitations imposed by the fibromyalgia. Tr. 308-09.

4 - OPINION AND ORDER

## Second Administrative Decision

On November 28, 2006, claimant, now represented by counsel, appeared and testified at a hearing held before a different ALJ ("the second hearing"). Tr. 417, 301, 330. Since the date of the supplemental hearing in February 13, 2004, the administrative record had grown substantially, particularly with regard to claimant's medical records. She had continued to seek medical treatment from all her treating physicians, John Scoltock, M.D. (primary physician), Paul Ash, M.D., Ph.D. (neurologist), and Dr. May (rheumatologist), and their reports were added to the record. Tr. 357-406. Additionally, on July 17, 2006, claimant was examined by Erik Blake, M.D., a doctor in physical medicine and rehabilitation occupational medicine, and his report was also added to the record. Tr. 407-414. Another VE also appeared and testified at the second hearing. Tr. 440.

On January 30, 2007, the ALJ issued a decision finding claimant not under a disability as defined in the Social Security Act "at any time from February 15, 1997, the alleged onset date, through December 31, 2002, the date last insured." Tr. 300. Like the first ALJ, the second ALJ concluded that claimant's fibromyalgia and history of bilateral carpal tunnel syndrome constituted severe impairments, but that her alleged depression and COPD did not. Tr. 291. The ALJ also concluded that despite claimant's impairments, she had the RFC to perform "a limited range of light exertion work," which would allow her to perform her past relevant work as an administrative assistant and secretary. Tr. 292, 299.

The ALJ employed the required five-step "sequential evaluation" process in evaluating claimant's disability. Tr. 289; see also 20 C.F.R. § 404.1520. A claimant has the initial burden of proving a disability in steps one through four of the analysis. See Burch v. Barnhart, 400 F.3d

676, 679 (9th Cir. 2005). If a claimant establishes that he or she is unable to perform past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful activity in jobs existing in significant numbers in the national economy. See id. (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)); see also Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).

At steps one through three, the ALJ found that claimant was not currently engaged in substantial gainful activity; she had severe impairments of fibromyalgia and a history of carpal tunnel syndrome; but her impairments did not meet or equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). Tr. 289-90. Claimant does not challenge those three determinations. Pl.'s Opening Br. (#12) at 9.

At step four, the ALJ found that claimant had the RFC to perform the requirements of her past relevant work. Tr. 299. Claimant disputes this finding. Pl.'s Opening Br. at 9. Although the ALJ found that claimant's medically determinable impairments reasonably could be expected to produce some of her alleged symptoms, he found her statements concerning the intensity, persistence, and limiting effects of these symptoms to not be entirely credible. Tr. 292.

Regarding the credibility of other third party opinion evidence, the ALJ generally found the statements of claimant's husband to be credible, except for his statements about the side effects of her medications. Tr. 297. The ALJ also agreed with the opinions of two agency non-examining medical sources. Id. Those medical sources determined that she was able to lift twenty pounds occasionally and ten pounds frequently; she could sit, stand, and/or walk about six hours in an eight-hour workday; she had unlimited abilities to push and pull within light exertion

work; and she had no postural, manipulative, visual, communicative, or environmental limitations. Id.

As directed by Judge Haggerty, the ALJ further discussed and considered the evidence regarding claimant's alleged fingering and handling limitations. Tr. 293-94, 298-99. The ALJ noted that several doctors had stated that the surgical releases performed for her bilateral carpal tunnel syndrome were successful and left claimant with no residual problems in her hands. Tr. 293-94. As for Dr. French's evaluation of claimant's fingering and handling limitations, the ALJ stated that Dr. French based his assessment on her history of bilateral carpal tunnel syndrome rather than on an objective examination. Tr. 298. Moreover, the objective tests he did perform on claimant (Tinel's and Phalen's tests) were negative for carpal tunnel syndrome indicators, and Dr. French noted that claimant had no pain in her wrist. Id. Because Dr. French's assessment was not based on an objective examination, the ALJ gave no weight to his assessment of claimant's manipulative restrictions. Id.

With regard to the requirement to obtain a statement from Dr. May as to claimant's limitations from fibromyalgia, the ALJ stated that this was no longer an issue for several reasons. Tr. 299. First, the record had been amply updated and included additional statements from Dr. May. Second, claimant was represented by counsel. Third, none of Dr. May's additional statements included work-related limitations imposed by fibromyalgia; in fact, his notes generally stated that claimant had responded well to treatment. Finally, the record contained other medical opinions that considered claimant's fibromyalgia and whatever limitations it might impose. Tr. 299.

7 - OPINION AND ORDER

## DISCUSSION

Claimant makes several challenges to the ALJ's determinations. Specifically, claimant argues that: (1) the ALJ improperly discounted claimant's credibility and thus failed to include all her limitations in the RFC finding; (2) the ALJ improperly rejected lay witness testimony; (3) the ALJ improperly rejected the opinions of Drs. Cole, Blake, and French; (4) the ALJ failed to fully develop the record by not requesting medical source statements from claimant's physicians; and (5) the ALJ's hypothetical posed to the VE was improper. Pl.'s Opening Br. at 10-20.

### Standard of Review

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. Magallenes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989); Andrews, 53 F.3d at 1039-40.

### 1.   Claimant's Credibility

In her initial application for DIB, claimant alleged that fibromyalgia, COPD, and depression limited her ability to work because of the pain, fatigue, and other limitations these impairments caused her. Tr. 66. In her most recent statement, claimant alleged disability based on "a combination of impairments including fibromyalgia, residuals of carpal tunnel syndrome

post bilateral releases, major depression, and a pain disorder associated with both psychological factors and a general medical condition." Pl.'s Opening Br. at 2. She alleged she could not work because of her inability to sustain good mental and physical energy, inability to sit for long periods of time due to pain, weakness in her hands and forearms, inability to grasp, pain in her hands, pain in other parts of her body, problems sleeping, and mental fatigue and confusion. Pl.'s Opening Br. at 2-4.

When considering subjective pain testimony, the Ninth Circuit begins with the Cotton test. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996) (citing Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)); see also Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc) (reaffirming Cotton). The Cotton test requires that the claimant produce "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Smolen, 80 F.3d at 1281 (citations omitted). Once the requirements of the Cotton test are met and in the absence of evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1281.

"If the ALJ finds that the claimant's testimony as to the severity of [the claimant's] pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). In making this determination, the ALJ may consider: (1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning symptoms, inconsistencies between claimant's testimony and conduct, and other testimony by claimant that

appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or

to follow a prescribed course of treatment; and (3) testimony from physicians and third parties

concerning the nature, severity, and effect of the symptoms of which claimant complains.

Smolen, 80 F.3d at 1284; Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ must also consider the factors set out in SSR 96-7p, which include:  (1)

claimant's daily activities; (2) the location, duration, frequency, and intensity of claimant's pain or

other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and

side effects of any medication claimant takes or has taken to alleviate pain or other symptoms;

(5) treatment, other than medication, claimant receives or has received for relief of pain or other

symptoms; (6) any measures other than treatment claimant uses or has used to relieve pain or

other symptoms; and (7) any other factors concerning claimant's functional limitations and

restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529.

Claimant argues that the ALJ's adverse credibility finding was improper because it was

not supported by "specific, cogent reasons." Pl.'s Opening Br. at 10. Claimant argues that

according to Bunnell v. Sullivan, once she produced medical evidence of an underlying

impairment, the ALJ could not discredit her testimony as to the severity of symptoms merely

because the severity is unsupported by objective medical evidence. Pl.'s Opening Br. at 10; see

also Bunnell, 947 F.2d 341, 242 (9th Cir. 1991) (en banc). Claimant also contends that the ALJ's

description of her daily activities was not a legitimate reason for finding her less than credible,

and that her allegations are supported by objective evidence, so the ALJ had no basis for rejecting

her testimony. Pl.'s Opening Br. at 10-11.

I disagree with claimant's argument.  The ALJ specified numerous reasons supporting his adverse credibility finding, which spanned seven pages of his opinion.  The ALJ did not discredit claimant's testimony *merely* because the alleged severity of her symptoms is not supported by objective medical evidence; indeed, the ALJ found that a certain level of symptoms would be expected.  In rejecting claimant's allegations concerning the severity of her symptoms, the ALJ did not merely describe claimant's daily activities; rather, he found inconsistencies between her statements concerning her alleged limitations and her actual daily activities.  In fact, many of claimant's allegations are contradicted by the medical record.  An actual "contradiction with the medical record is sufficient basis for rejecting the claimant's subjective testimony."  Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995); see also Carmickle, 533 F.3d at 1161 (concurring with the ALJ's adverse credibility finding of claimant's testimony based on a contradiction between claimant's testimony and a doctor's testimony regarding how much weight the claimant could lift).

The ALJ's findings satisfy the legal requirements discussed above.  Specifically, the ALJ reviewed the entire record in notable detail and pointed to and discussed, among other things, the following:

1.    Claimant's allegations of pain, numbness, and weakness in her hands and wrists from carpal tunnel syndrome are contradicted by Drs. May and French and Harold Boyd, M.D., who reported that the surgical release had an "outstanding result" and "excellent resolution of her discomfort," that carpal tunnel tests at the wrist were negative, no pain at the wrist, and that she was expected to recover to an active state and resume her usual activities within a few months of her surgical release.  Tr. 292-94; see also Tr. 134, 246, 247.

2.      Claimant's alleged problems with strength and grasp in her hands are contradicted by medical assessments that her "grip and intrinsic muscle strength [were] normal." Tr. 294, 296; see also Tr. 159, 369, 234, 361.

3.      Claimant's alleged hand problems and mental impairments are contradicted by her own prior statements that she had no residual problems with her hands and had no mental issues that affected her ability to work.  Tr. 293, 296.

4.      Claimant's alleged mental impairments and sleeping problems are contradicted by Dr. Cole's statement that she only had mild problems with attention and concentration and Dr. May's statements that claimant was sleeping better with prescription medication.  Tr. 296, 295.

5.      There is a lack of medical records or objective findings that support claimant's allegations, and the medical assessments describing her affirmative ability to perform tasks within the range of light exertion work further contradict claimant's allegations. Tr. 297-99.

6.      Claimant's unexplained lapse in treatment from Dr. May does not support her allegations regarding the severity of her symptoms caused by fibromyalgia.  Tr. 295.

7.      Claimant's own statements regarding her intent to seek vocational rehabilitation and exercise and her role as primary caregiver for a terminally ill relative are inconsistent with the level of disability she has claimed.  Tr. 296-97.

8.      Claimant's husband's descriptions of her daily activities, which included visiting with friends and relatives, engaging in normal conversations and behaviors with friends, gardening, sewing, daily reading of novels, newspapers, and magazines, light housework, watching television, relatively frequent driving, ability to sleep six hours at night, and frequent meal preparation, are inconsistent with the level of disability she has claimed.  Tr. 297.

For the reasons above, I find that the ALJ provided adequate reasoning to support his adverse credibility determination.

## 2.    **Lay Witness Statements**

Claimant next claims that the ALJ improperly rejected her husband's statements. Claimant's argument mischaracterizes and exaggerates the extent to which the ALJ rejected the husband's statements. The ALJ found his statements to be "credible," "except for the alleged side-effects." Tr. 297.

The ALJ's reasoning for rejecting this portion of the husband's statements was not erroneous. The ALJ reasoned that "there [were] no other references in the record about *these* alleged side-effects," referring to the husband's account that claimant suffered from "anxiety and sometimes dizziness" as a result of her medications. Tr. 297 (emphasis added); see also Tr. 95. Although the record shows that claimant experienced side-effects from her medication, they consisted of stomach pain, heartburn, shakiness, and hyperactivity, not anxiety and dizziness. Tr. 186, 188, 198, 238, 195, 246, 256; see also Pl.'s Opening Br. at 12. Thus, I find no merit in claimant's claim concerning the ALJ's handling of her husband's lay testimony.

## 3.    **Opinions of Drs. Cole, Blake, and French**

Claimant next claims that the ALJ improperly rejected certain testimony of Drs. Cole, Blake, and French. The weight given to medical opinions depends in part on whether they are opinions of treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); 20 C.F.R. § 404.1527(d). Generally, more weight is given to the opinion of a treating medical professional, who has a greater opportunity to know and observe the patient as an individual. Lester, 81 F.3d

at 830. Also, the opinion of an examining medical professional is entitled to more weight than the opinion of a non-examining professional. Id. (citing Pitzer v. Sullivan, 908 F2d 502, 506 (9th Cir. 1990)).

An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons, but may reject contradicted opinions for "specific and legitimate" reasons. Lester, 81 F.3d at 830-31. The opinion of a non-examining medical professional, however, cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining or treating medical professional. Id. at 831 (citing Pitzer, 908 F.2d at 506 n. 4).

Here, Drs. Cole, Blake, and French are examining doctors, as each examined claimant but did not treat her. Tr. 246-55, 407-14, 207-13. I address each doctor's opinion in turn.

a.    **Dr. Cole**

Dr. Cole offered opinions covering only claimant's alleged mental impairments, but claimant has not disputed the ALJ's finding that her alleged depression was not severe. Pl.'s Opening Br. at 9. Consequently, I need not address this issue. See Paladin Assocs., Inc. v. Mont. Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (noting that the court ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief).

b.    **Dr. Blake**

Claimant claims that the ALJ improperly rejected Dr. Blake's opinion that claimant could only occasionally climb, crawl, crouch, and kneel, and would need to alternate sitting and standing to relieve pain or discomfort. Pl.'s Opening Br. at 15; Tr. 409. Dr. Blake's opinion

14 - OPINION AND ORDER

concerning claimant's ability to climb, crawl, etc., is discussed below in conjunction with Dr. French.

With respect to Dr. Blake's opinion that claimant would need to alternate between sitting and standing, that opinion was contradicted by Dr. French, who noted that claimant would be able to sit or stand for about six hours in an eight-hour work day without any additional limitations, Tr. 249, as well as the opinions of non-examining medical sources. Tr. 228, 230, 234. Thus, I look to whether the ALJ had specific and legitimate reasons to reject Dr. Blake's opinion. I find that he did.

An ALJ may discredit an opinion that is unsupported by objective medical findings. Batson, 359 F.3d at 1195. The ALJ rejected Dr. Blake's opinion because it was inconsistent with Dr. Blake's own objective findings. Tr. 298. For instance, Dr. Blake noted, among other things, that claimant "was able to sit on the exam table for a *prolonged period* without any apparent difficulty." Tr. 298 (emphasis added); see also Tr. 408 (where Dr. Blake states that "[b]ased on [claimant's] *demonstrated* level of functioning today, she could stand and move about six hours and sit for about six hours in an eight hour work day with *normal breaks*") (emphasis added).

c.    **Dr. French**

Claimant claims that the ALJ improperly rejected Dr. French's opinions that claimant was expected to have "difficulty with her history of fibromyalgia and carpal tunnel release with heavy repetitive use of the hands and heavy repetitive gripping," would only be able to carry or lift less than ten pounds frequently, and would only occasionally be able to stoop, bend, crouch, squat, or crawl. Pl.'s Opening Br. at 13-14; Tr. 298, 247, 249.

Dr. French's opinions regarding claimant's alleged handling, gripping, and lifting limitations were contradicted by Dr. Blake's opinion, which noted that claimant had "no difficulty with reaching, holding, gripping, or manipulation using either hand" and could "lift at least 20 pounds on an occasional basis and at least 10 pounds frequently." Tr. 409. Dr. French's opinions were also contradicted by agency non-examining medical opinions. Tr. 228, 230, 234. Thus, I review the ALJ's rejection of these statements under the "specific and legitimate" standard.

I agree with the ALJ that Dr. French largely premised his opinion regarding claimant's handling and gripping limitations on her subjective complaints and her history of fibromyalgia and carpal tunnel syndrome. By saying that he "expect[ed]" she would have difficulty given her history, he did not *conclude* she had such limitations based on objective evidence. Tr. 247. Also, several of Dr. French's objective tests revealed no problems with range of motion, pain at the wrist, and negative carpal tunnel tests at the wrist. Tr. 247. Furthermore, Dr. French's opinion is partially contradicted by reports from claimant's treating physicians (Drs. Boyd and May) who noted that the surgical releases provided successful resolution to claimant's carpel tunnel symptoms. Tr. 292-93. Based on these factors, the ALJ had specific and legitimate reason based on substantial evidence in the record to reject this portion of Dr. French's opinion.

I agree with claimant that the ALJ erred in concluding that Dr. French's assessment of claimant's lifting limitations was consistent with the ALJ's own assessment, because although Dr. French stated that claimant could only lift *less than* ten pounds frequently, the ALJ concluded that claimant could frequently lift *up to* ten pounds. Tr. 298, 249, 292. However, by his own admission, Dr. French's opinion regarding claimant's lifting limitations was affected by her "equivocal effort with functional tasks." Tr. 247. Even though claimant "demonstrated a 10

16 - OPINION AND ORDER

pound lift *occasionally*," Dr. French projected she could actually lift "15 or 20 pounds." Id. (emphasis added). This assessment was consistent with Dr. Blake's assessment, the opinions of the non-examining sources, and ultimately, the ALJ's determination. Tr. 409, 228, 230, 292, 297. Dr. French failed to make the same adjustment for claimant's equivocal effort in assessing the weight that claimant could *frequently* lift. Tr. 249, 252. In view of that omission, I conclude that the ALJ had specific and legitimate reasons to discount Dr. French's opinion; thus, the ALJ's error in conflating "less than" and "up to" 10 pounds was harmless.

Dr. French's opinion regarding claimant's postural limitations (that she could only occasionally stoop, bend, crouch, squat, or crawl) generally was consistent with Dr. Blake's opinion (occasional ability to climb, crawl, crouch, and kneel), but inconsistent with a non-examining medical source opinion, who reported no postural limitations. Tr. 247, 409, 229. Contrary to Lester, the ALJ rejected Dr. French's opinion (and consequently, Dr. Blake's opinion) in favor of the non-examining source opinion without citing additional substantial evidence, Lester, 81 F.3d at 831; Tr. 297-98, although the ALJ noted that Dr. French's exam took place "about 11 months after the claimant's date last insured," and that the record did not demonstrate that claimant had such limitations prior to her date last insured.[1] Tr. 298.

While the record does not establish that claimant had such limitations during the relevant time period, the record does permit an inference that her fibromyalgia reasonably could have

---

[1] The ALJ also rejected Dr. Blake's examining opinion regarding claimant's postural limitations, because Dr. Blake found that claimant was able to sit on the exam table for a prolonged period without any difficulty, she was able to walk on her heels and toes, she had no difficulty transferring onto or off the exam table, and her stance and gait were normal. Tr. 298-99. Those reasons do not necessarily go to claimant's occasional ability to climb, crawl, crouch, and kneel, so the ALJ's rejection of this portion of Dr. Blake's opinion on that basis alone is insufficient.

produced such limitations. However, to the extent the ALJ failed to properly reject Dr. French's and Dr. Blake's postural limitations, the error was harmless, because even with the postural limitations, the ALJ properly could find that claimant had the RFC to perform a "limited range of light exertion work." Tr. 292. This is because the statutory definition of "light work" does not account for the ability, whether occasional or frequent, to stoop, bend, crouch, squat, crawl, climb, or kneel. See 20 C.F.R. § 404.1567; SSR 83-10.

A person who "can do light work . . . can also do sedentary work." 20 C.F.R. § 404.1567. Because claimant's past relevant work required only sedentary exertion, the ALJ correctly found that claimant had the RFC to perform her past relevant work. Tr. 22, 280-81, 299, 441. Thus, the ALJ's error, if any, in not including claimant's postural limitations did not affect the validity of his RFC determination or his finding that claimant had the RFC to perform her past relevant work.[2]

## 4.    Medical Source Statements

Claimant next claims that the ALJ failed to fully develop the record by not requesting medical source statements from each of her medical providers. Pl.'s Opening Br. at 16. I find this argument to be without merit.

First, a claimant has the initial burden of proving a disability in steps one through four of the analysis, and the claimant is generally responsible for providing the evidence that will be used in making a determination of the claimant's RFC. See Burch, 400 F.3d at 679; 20 C.F.R.

---

[2]  At the second hearing, the ALJ posed a second hypothetical to the VE that included the postural limitation of occasional stooping, crouching, and crawling, as well as manipulative limitations. Tr. 442. Although the VE stated that a hypothetical person would not be able to perform claimant's past relevant work under these circumstances, he clarified that he attributed this inability to the manipulative limitations and not the postural ones. Tr. 442.

§ 404.1545. As previously noted, claimant continued to seek medical treatment from all her treating physicians after the supplemental hearing, and as a consequence the administrative record was amply updated. After the court's order on August 18, 2005, claimant, who had the assistance of counsel at the time, saw Dr. May for treatment on at least five occasions. Tr. 397, 398, 402, 403, 404. Yet, claimant did not (or could not) get any statement from Dr. May or from her other treating physicians about her alleged limitations. Instead, she submitted a letter from Dr. May only clarifying his initial diagnosis of fibromyalgia. Tr. 406. Thus, despite claimant's ample opportunity to acquire medical source statements from her treating physicians, she failed to do so. She cannot "improperly shift her own burden to the ALJ" and now lay blame on him for her failure. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001).

Second, as admitted by the claimant, the lack of a medical source statement does not make the record incomplete. Pl.'s Opening Br. at 17; 20 C.F.R. § 404.1513(b)(6). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes, 276 F.3d at 459-60. Here, the ALJ had substantial medical evidence to evaluate, including medical source statements from Drs. French, Blake, and Cole. The evidence in the record was neither ambiguous nor insufficient to allow for proper evaluation.

Third, with regard to the court order, which required the ALJ to get a medical source statement from Dr. May, I agree with the Commissioner that this issue was no longer before the ALJ. The court order was primarily premised on the fact that claimant was not represented by counsel, which required the ALJ to more "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Tr. 307 (quoting Cox, 587 F.2d at 991). Once

claimant was represented by counsel, the burden on the ALJ to develop the record was reduced.

Also, as noted, the record had been amply updated and included additional statements by Dr.

May. Tr. 299. Finally, I agree with the ALJ that Dr. May's records primarily recorded only

claimant's subjective complaints and his prescribed treatment, and contained few, if any,

objective findings.

## 5.    <u>VE Hypothetical</u>

Finally, claimant claims that the ALJ's hypothetical to the VE at the second hearing was

improper, because it did not accurately reflect all of her limitations. Pl.'s Opening Br. at 19.

While a VE's testimony cannot constitute substantial evidence to support an ALJ's determination

as to a claimant's disability status unless it accurately reflects all of the claimant's alleged

limitations, an ALJ can disregard alleged limitations and exclude them from the hypothetical if

he or she sets forth specific and legitimate reasons supported by substantial evidence in the

record. <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1158, n. 13 (9th Cir. 1989); <u>Embrey v. Bowen</u>, 849

F.2d 418, 422-23 (9th Cir. 1988). Also, an ALJ is "free to accept or reject restrictions in a

hypothetical question that are not supported by substantial evidence." <u>Osenbrock v. Apfel</u>, 240

F.3d 1157, 1164-65 (9th Cir. 2001).

For all the reasons discussed above, I find that the ALJ properly excluded many of

claimant's alleged limitations from the hypothetical questions posed to the VE. Thus, I find

claimant's last claim to be without merit.

20 - OPINION AND ORDER

## CONCLUSION

For the foregoing reasons, and based on my review of the record, the Commissioner's decision denying Williams' disability insurance benefits under Title II of the Social Security Act is AFFIRMED.

DATED this _1_ day of October, 2008.

_Robert E. Jones_

ROBERT E. JONES
U.S. District Judge

21 - OPINION AND ORDER